UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

STEVEN CURTIS, et al.                                                                              PLAINTIFF

vs.                                                                        CIVIL ACTION NO. 3:20-CV-735-CRS

OFFICER TONY SUMERALL, et al.                                                            DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on the motion for summary judgment filed by Defendants Anthony Sumerall, Christopher Rutherford, Mark Batson, Donald Hillerich, Kelly Richardson, Cody Woolston, Ian Stuart, and Jessica Mauck. DN 29. Plaintiffs Steven Curtis and Zaman Taylor filed a response (DN 45[1]), and Defendants replied. DN 49. The matter is now ripe for adjudication. Also before the Court is Shynia Curtis' request for substitution as plaintiff for the deceased plaintiff Steven Curtis. DN 51. For the reasons stated herein, Defendants' motion will be granted and Shynia Curtis' request will be granted.

**I. BACKGROUND**

This case arises from the arrests of Steven Curtis and Zaman Taylor following a fatal shooting in Louisville, KY. In the early evening of September 13, 2020,[2] a white sport utility vehicle (SUV) pulled up beside Terry Johnson's yellow Chevrolet Camaro on Poplar Level Road near the intersection with East Indian Trail Boulevard. DN 29-6. The SUV fired shots into the Camaro, striking Johnson and passenger Tana Hillman. DN 29-4, *Jim Dandy Security Video*,

---

[1] Plaintiffs' motion for enlargement of time to respond to the motion for summary judgment is also before the Court. DN 44. Plaintiffs have demonstrated good cause, and the unopposed motion will be granted.
[2] Various video recordings and documents place the shooting at a time between 7:29 p.m. and 7:47 p.m. *See* DN 29-4, Jim Dandy Security Video; DN 29-2, Helm, Shots Fired, Body Camera at 41:30–41:50; DN 29-3, Joplin Pursuit Video Body Camera at 00:28–00:35; DN 29-6.

00:10–00:38. Johnson pulled the Camaro into a parking lot in front of the Jim Dandy Food Mart. *Id.* Louisville Metro Police Department (LMPD) Officer Kayla Helm responded to Johnson's vehicle. DN 29-2, Helm Shots Fired Body Camera at 41:50–42:10. Johnson told Helm that "somebody shot my girl in the head," and "they were in a white Jeep Cherokee." *Id.* at 42:10–42:45. Johnson stated that he and Hillman "just came from a . . . video shoot over there." *Id.* Helm asked Johnson to describe the Jeep and Johnson pointed to the road and said "[l]ook at them they're taking off now in the white Jeeps they're taking off . . . they're taking off right now . . . it's the white Jeep they just took off that way that's what I'm trying to tell you. They're going up that way ma'am." *Id.* at 43:45–44:22.

LMPD Officer Joplin heard the shots fired, and as he drove to respond he heard the Jeep identified over police radio. DN 29-3, Joplin Pursuit Video Body Camera at 00:30–2:40. Joplin spotted a white Jeep driving on Poplar Level Road at the intersection with Indian Trail Boulevard. *Id.* at 2:40–3:45. Joplin followed the Jeep with lights and sirens activated and attempted to stop the Jeep as it sat at a red traffic light. *Id.* The Jeep fled, running through the red light. *Id.* Officer Joplin pursued the Jeep along Poplar Level Road until the Jeep ran off the road into a ditch next to the Interstate 264 on-ramp. *Id.* at 3:45–4:45. Marcus Vester, the Jeep's driver, exited the vehicle and fled on foot from police. DN 29-4, Joplin Dash Camera Pursuit Video at 3:00–3:40. Two passengers also exited the vehicle but complied with LMPD officers' commands. *Id.*; DN 29-3, at 4:45–5:29. All four of the Jeep's occupants, including Steven Curtis and Zaman Taylor, were taken into custody. DN 29-3, at 8:50–12:50.

That evening an individual called 911 and reported that "it looks like there was a shooting out here on Indian Trail and Poplar Level and we were just riding the bikes and we saw somebody dump a gun right here in the middle of Polar Level." DN 45-8, 911 Call at 00:32–00:48. Another

individual told the operator that "there was a pursuit and I think they dropped the gun from the window right here right by the bridge on the 264 and Poplar Level. If you're interested in that you can come get it, or we can leave and leave the gun here I'm not going to touch it." *Id.* at 2:00–2:30. At approximately 8:40 p.m., LMPD Officer Rutherford responded to the location to interview the 911 caller and spoke with two men. DN 29-7, Rutherford Body Camera Video at 0:30–2:10. The men pointed to a gun on the shoulder of the road and said they had kicked it over from the road. *Id.* One of the men said he noticed the gun in the road after the Jeep and the pursuing police vehicles had passed by. *Id.* at 2:17–3:03. Neither man had seen the gun emerge from a vehicle or fall onto the road. *Id.* at 2:17–3:03, 5:36–6:10.

At 10:15 p.m., LMPD homicide detective Anthony Sumerall interviewed Vester, the Jeep's driver. DN 45-12, Vester Interview in Maj. Office at 00:00–00:20. Vester affirmed that he had been at the filming of a music video that evening and stated that while he was driving a white vehicle "somebody just started shooting at us." *Id.* at 4:20–5:01. Vester said that the "car was following us shooting at us." *Id.* at 7:00–9:00. He said he drove off when the police car pulled up behind him because he saw a blue car that had shot at his vehicle "still coming." *Id.* Sumerall interviewed Vester again at 11:24 p.m., but the interview concluded when Vester requested an attorney. DN 45-13, Vester Interview Re-entry in Maj. Office at 00:00–00:40.

At 12:16 a.m. on Monday September 14, 2020, officers began a search of Vester's Jeep pursuant to a warrant. DN 29-8. Three .40 caliber shell casings were found inside the Jeep. *Id.* At 12:18 a.m., Sumerall charged Taylor with murder, assault, and tampering with physical evidence. DN 29-10. At 12:33 a.m., Vester requested to speak with Sumerall. DN 45-17, Vester Interview Re-entry 2 in Maj. Office at 00:28–00:40. Sumerall stated that he could not discuss the investigation further pending the arrival of Vester's attorney, and that he could only say that Vester

3

was going to be charged with murder, assault, tampering, and fleeing. DN 45-17, Vester Interview Re-entry 2 in Maj. Office at 00:28–00:40. Vester then said: "They can see that I [haven't] shot nobody." *Id.* at 00:56–1:04. At 12:40 am., Steven Curtis was charged with murder, assault, and tampering. DN 29-9.

On September 15, Sumerall filed a report stating that he had reviewed a video of the shooting obtained by an attorney for an arrestee. DN 29-6. The video showed that the wheels of the Jeep that had shot into Johnson's Camaro had silver rims. *Id*; DN 29-4, Jim Dandy Security Video at 00:10–00:38; DN 29-12. The Jeep Vester had been driving had black rims. DN 29-6. Because Vester's vehicle had not been involved in the Hillman shooting, Sumerall determined that the charges against the occupants of Vester's Jeep should be dropped immediately. *Id.* The charges against Steven Curtis and Zaman Taylor were dismissed on September 16, 2020. DN 29-13, at PageID # 202; DN 29-14, at PageID # 210.

On November 3, 2020, Steven Curtis and Zaman Taylor filed this action alleging civil rights violations under 42 U.S.C. § 1983, and various state tort claims against Sumerall and unknown individuals. DN 1. Plaintiffs later filed an amended complaint naming additional officers. DN 27. Plaintiffs assert § 1983 claims for deprivation of rights under the Fourth and Fourteenth Amendment, and state law claims for false arrest/imprisonment, malicious prosecution, defamation, false light invasion of privacy, and intentional infliction of emotional distress. *Id.* This Court has federal question jurisdiction over the § 1983 claims and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. §§ 1331, 1343, and 1367(a). Defendants now move for summary judgment on all claims.

Shynia Curtis, the only surviving adult child of Plaintiff Steven Curtis, reports that Steven Curtis died intestate on July 1, 2022. DNs 48, 51. Shynia Curtis requests to be substituted as

4

plaintiff in this action pursuant to Rule 25(a)(3) of the Federal Rules of Civil Procedure. DN 51. The Court will grant the unopposed request.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of explaining the basis for its motion and demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). That burden may be satisfied only by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish . . . a genuine dispute." Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Should the movant meet its burden, the nonmovant must produce evidence demonstrating a genuine issue for trial. *Id.* at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The nonmovant "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A court must view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372,

378, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007). But when video evidence is in the record, courts should "view[] the facts in the light depicted by the videotape." *Id.* at 381.

## III. DISCUSSION

### A. Official Capacity Claims

Suits against public officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Because the defendant LMPD officers are agents of the Louisville Metro Government (Metro), Metro is the proper defendant. *See Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990). Therefore, the Court construes Plaintiffs' official capacity claims as claims against Metro.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. A government entity may face liability under § 1983 for a constitutional deprivation only if the entity's policy or custom is a "moving force behind the deprivation." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (internal quotation marks and citation omitted).

Defendants argue that Plaintiffs "have raised no allegation with respect to Metro's policy or custom" and thus the complaint fails to state a claim for relief. DN 29-1, at PageID # 177. Plaintiffs did not address this argument in their response and have not alleged or produced evidence that a policy or custom implemented or endorsed by Metro was a moving force behind any of the alleged actions. Therefore, Plaintiffs have failed to establish an essential element of the claim, and the Court will grant summary judgment.

### B. Officers Rutherford, Batson, Hillerich, Richardson, Woolston, Stuart, and Mauck

Defendants argue that the amended complaint fails to allege any specific action by officers Rutherford, Batson, Hillerich, Richardson, Woolston, Stuart and Mauck that deprived Plaintiffs of their civil rights. DN 29-1, at PageID # 174. In *Wilson v. Morgan*, the Sixth Circuit held that "an officer who is merely present at a scene but is not directly responsible for the complained of action is entitled to qualified immunity from suit under § 1983." 477 F.3d 326, 337 (6th Cir. 2007). The Court went on to find that "only officers with direct responsibility for the challenged action may be subject to § 1983 liability." *Id.*

Plaintiffs respond that the amended complaint alleges that "Rutherford, Batson, Hillerich, Richardson, Woolston, Stuart, and Mauck were involved in a high speed chase." DN 27, at PageID # 141. Plaintiffs also point to a collective allegation in the complaint that these officers "negligently and/or refused to take proper care and steps in investigating the September 13, 2020 murder and assault." DN 27, at PageID # 142. Plaintiffs only refer to collective actions and do not identify a specific act of any of these officers that would satisfy the elements of any of the § 1983 claims. DN 45-1, at PageID # 314. Plaintiffs must provide something more than "conclusory allegations of officers' collective responsibility . . . to survive summary judgment." *Gordon v. Louisville/Jefferson Cnty. Metro Gov't*, 486 F. App'x 534, 539 (6th Cir. 2012) (internal quotation marks and citation omitted). Because Plaintiffs have not identified facts to demonstrate the direct responsibility of these officers for any of the challenged actions, these officers are entitled to qualified immunity on the federal claims.

Turning to the state law claims against these officers, Defendants argue that the amended complaint "does not attribute any act to any particular defendant beyond asserting that Detective Sumerall filed the criminal complaints." DN 29-1, at PageID # 175. The Court "need not accept

as true any 'conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'" *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)). Plaintiffs have only identified allegations of these officers' collective involvement in the high speed chase and the murder investigation. These allegations do not establish the necessary elements of any of Plaintiffs' state law claims. Plaintiffs have failed to set forth evidence demonstrating a genuine issue for trial as to the state law claims against these officers. Therefore, summary judgment will be granted on all claims against Rutherford, Batson, Hillerich, Richardson, Woolston, Stuart, and Mauck.

### C. Officer Sumerall

#### 1. Federal Claims

Section 1983 imposes civil liability on one who, under color of state law, deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "A plaintiff suing under § 1983 must establish [1] that he was denied a constitutional right, and [2] that the deprivation was caused by a defendant acting under color of state law." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692, 61 L. Ed. 2d 433 (1979).

Sumerall argues that he is entitled to summary judgment on the § 1983 claims because his conduct did not violate Plaintiffs' constitutional rights and because he is protected by qualified immunity. DN 29-1, at PageID # 176. Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

8

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). After a defendant has successfully raised the defense, the plaintiff "bears the burden of overcoming the qualified immunity defense. At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 608 (6th Cir. 2015) (internal citation omitted).

The U.S. Supreme Court explained the clearly established standard in *D.C. v. Wesby*, 199 L. Ed. 2d 453, 138 S. Ct. 577 (2018). The Supreme Court reiterated that courts should not "define clearly established law at a high level of generality," particularly when evaluating Fourth Amendment claims. *Id.* at 590. (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)). A constitutional right is clearly established if "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id.* at 589 (internal quotation marks and citation omitted). This standard requires that a legal principle have a "clear foundation in then-existing precedent. . . . The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 589–90. The principle must "clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* at 590.

### a. Fourteenth Amendment Due Process Claim

Count I of the complaint alleges that the arrests violated Plaintiffs' rights "under the Fourteenth Amendment of the United States Constitution to due process of law." DN 27, at PageID # 144. In *Radvansky v. City of Olmsted Falls*, the Sixth Circuit considered a claim that an arrest without probable cause "deprived [the plaintiff] of liberty without due process of law." 395 F.3d 291, 313 (6th Cir. 2005). The Sixth Circuit affirmed a grant of summary judgment, holding

that the plaintiff's "reliance on the Due Process Clause is misplaced, however, because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Id.* The Fourteenth Amendment claim under the Due Process Clause is without merit, and summary judgment will be granted on this claim.

### b. Fourth Amendment Claims

Counts I and II of the amended complaint allege Fourth Amendment false arrest claims. DN 27, at PageID # 144–45. Count III of the amended complaint alleges a § 1983 malicious prosecution claim. *Id.* at 145–46. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593, 160 L. Ed. 2d 537 (2004). "Thus, 'in order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause.'" *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (quoting *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir. 2002)).

"The Sixth Circuit 'recognise[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright,* 449 F.3d 709, 715–16 (6th Cir. 2006)). To succeed on a malicious prosecution claim, the plaintiff must establish four elements: "(1) the defendant made, influenced, or participated in the decision to prosecute; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor." *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (internal quotation

marks and citation omitted). "As a matter of substance, the Fourth Amendment prohibits only those pretrial seizures (or prosecutions) that lack *probable cause*, and § 1983 grants qualified immunity to defendants who mistakenly but reasonably conclude that probable cause exists." *Id.* at 607 (emphasis in original). Thus, Plaintiffs must set forth facts from which a reasonable jury could conclude that the arrest lacked probable cause to establish a necessary element of all Fourth Amendment claims.

Probable cause for arrest is defined as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632, 61 L. Ed. 2d 343 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Courts "consider the totality of the circumstances and whether the facts and circumstances of which [the arresting officer] had knowledge at the moment of the arrest were sufficient" to establish probable cause. *Sykes*, 625 F.3d at 306 (internal quotation marks and citation omitted).

Sumerall argues he had probable cause to arrest Steven Curtis and Zaman Taylor. DN 29-1, at PageID # 178. At the time of the arrests, Sumerall knew that Curtis and Taylor were passengers in Vester's Jeep and that: 1) a victim, Johnson, had identified Vester's white Jeep as the perpetrator of the Hillman shooting; 2) Vester's Jeep fled from police; 3) a gun was recovered in the roadway in the wake of the police chase; 4) Vester fled from police on foot after the crash;

11

and 5) three .40 caliber shell casings were found in Vester's Jeep. *Id.* These facts taken together rendered it more likely than not, based on the information available to Sumerall at the time of the arrests, that the occupants of the Jeep were responsible for the shooting of Tana Hillman.

Plaintiffs point to several facts that they argue negate probable cause. DN 45-1, at PageID # 306–313. These facts include: 1) Vester's statement that he fled from police because he was scared (*id.* at 309); 2) Vester's statements that he had been filming a music video (*id.* at 311); 3) social media videos purportedly taken the night of the shooting depicting Steven Curtis and Zaman Taylor next to a white jeep holding guns (*id.* at 312); 4) that when Vester stated he was in the area of the shooting he was not referring to the Hillman shooting (*id.* at 313); 5) Vester's statement denying that he had shot anyone (*id.*); and 6) the fact that Johnson, the victim who identified the Jeep, was not questioned further before the arrests. *Id.* at 314. None of these facts are plainly exculpatory and Plaintiffs fail to make a comprehensible argument with citation to authority for why these facts demonstrate that the arrests were without probable cause. Plaintiffs generally point to the proposition that officers cannot ignore potentially exculpatory evidence, but do not connect the facts of the cases cited with the facts in this action. *Id.* at 305. The cases cited are either easily distinguishable from the facts of the instant action or do not support Plaintiffs' contentions.

In *Baptiste v. J.C. Penney Company*, officers arrested a suspect for shoplifting based upon statements made by a store security guard. 147 F.3d 1252, 1256–57 (10th Cir. 1998). The Tenth Circuit found the arrest lacked probable cause because a videotape of the alleged criminal conduct, which officers viewed prior to the arrest, rebutted the guard's account and the suspect produced receipts for the merchandise. *Id. Baptiste* is clearly distinguishable. Sumerall did not view video evidence before the arrest that contradicted Johnson's identification of Vester's vehicle. Sumerall

12

had not viewed the Jim Dandy surveillance video, which was exculpatory, at the time of the arrest. Plaintiffs argue that social media videos negate probable cause. DN 45-1, at PageID # 312. They have not explained, nor is it apparent, how the social media videos identified in their response clearly refute Johnson's eyewitness identification of Vester's Jeep. Therefore, *Baptiste* provides no support for a finding that the arrests lacked probable cause.

In *Kuehl v. Burtis*, the Eighth Circuit held that an officer was not entitled to qualified immunity because, in the process of determining whether probable cause existed, he "ignored plainly exculpatory evidence" and failed to conduct further investigation. 173 F.3d 646, 651 (8th Cir. 1999). In *Kuehl*, the officer had arrested a store owner for assault. During his investigation, the officer failed to interview an eyewitness seeking to make a statement, omitted a witness's retraction from his report, and ignored exculpatory evidence including bruising on the arrestee's face. *Id.* at 648. Our case differs in several ways from *Kuehl*. There is no evidence Sumerall declined to interview any witness requesting to make a statement, nor that he omitted evidence of a witness retraction, and Plaintiffs have not identified plainly exculpatory evidence known to Sumerall at the time of the arrest. Thus *Kuehl* provides no support for a contention that this arrest lacked probable cause.

Plaintiffs cite to *Ahlers v. Schebil* for the proposition that officers may not "make hasty, unsubstantiated arrests with impunity." 188 F.3d 365, 371 (6th Cir. 1999). In *Ahlers*, a detainee accused a corrections officer of sexual assault. *Id.* at 367. The corrections officer argued that investigating officers failed to turn over or investigate potentially exculpatory evidence prior to a magistrate judge's probable cause determination. *Id.* at 370. The *Ahlers* Court cautioned "that officers, in the process of determining whether probable cause exists, cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on

13

someone." *Id.* at 372 (emphasis omitted). But the *Ahlers* Court held that the victim's accusation "standing alone, was sufficient to establish probable cause." *Id.* at 370. The Sixth Circuit went on to hold that "law enforcement 'is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.'" *Id.* at 371 (quoting *Criss*, 867 F.2d at 263). The Sixth Circuit ultimately held that officers "were under no duty to continue their investigation and discover the information which [the plaintiff] believes would have exculpated him." *Id.* at 370. Thus *Ahlers* does not support a contention that Sumerall had a duty to forego arrest pending further investigation of Vester's protestations of innocence or any other potentially exculpatory evidence. Indeed, *Ahlers* supports a finding that Johnson's eyewitness statement provided probable cause for the arrest.

Plaintiffs argue that officers failed to ask Johnson additional questions prior to the arrest "and there was no corroborating identifications." DN 45-1, at PageID # 314. Plaintiffs cite to *Wesley v. Campbell*, where the Sixth Circuit explained the rule that "an eyewitness's 'mere allegation' may create reasonable suspicion justifying an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but falls short of creating probable cause absent some corroborating evidence of wrongdoing." 779 F.3d 421, 429 (6th Cir. 2015). But in *Wesley* the Court found it significant that the witness was a minor and went on to hold that "the presumption of veracity applies only where the witness is 'someone with respect to whom there is *no* apparent reason to question the person's reliability.'" *Id.* at 430 (quoting *Logsdon v. Hains*, 492 F.3d 334, 343 (6th Cir. 2007)) (emphasis in original). Plaintiffs point to no facts that demonstrate that Johnson, an adult crime victim, was unreliable or untruthful. And the Jeep's flight from police served as evidence of wrongdoing to corroborate Johnson's identification of the

Jeep. *See United States v. Price*, 841 F.3d 703, 706 (6th Cir. 2016) ("When the police already have reasonable suspicion that a person has committed a crime, and the suspect later flees from police, they have probable cause to arrest him."). Therefore, *Wesley* does not support a finding that the arrest lacked probable cause.

Plaintiffs have failed to identify evidence sufficient to support a reasonable jury in finding that the arrest lacked probable cause, and thus have failed to create a genuine issue of material fact as to any of the alleged Fourth Amendment violations. Plaintiffs also have not identified a single case where an arrest under similar circumstances violated the Fourth Amendment, such that the unlawfulness of the particular arrest was "beyond debate." *D.C. v. Wesby*, 199 L. Ed. 2d 453, 138 S. Ct. 577, 589 (2018). Plaintiffs have failed to establish a constitutional violation or that the arrest violated clearly established law, as required to overcome the qualified immunity defense. Therefore, Sumerall is entitled to qualified immunity on the §1983 claims.

### 2. State Law Claims

#### a. False Imprisonment

In Count IV Curtis and Taylor assert a "Kentucky False Arrest/Imprisonment Claim" and allege that Sumerall "arrested Plaintiffs without a warrant" and that the "actions were not reasonable nor in good faith." DN 27, at PageID # 147. Under Kentucky law, the tort of false arrest by a police officer is synonymous with the tort of false imprisonment. *Lexington-Fayette Urb. Cnty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. Ct. App. 1977). "A law enforcement officer is liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual." *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). "An action for false imprisonment may be maintained where the imprisonment is without legal authority." *Smith v. Stokes*, 54 S.W.3d 565, 567 (Ky. Ct. App. 2001) (quoting *SuperX Drugs of Kentucky, Inc. v. Rice*, 554 S.W.2d 903,

15

907 (Ky. Ct. App. 1977)). An officer has legal authority to arrest without a warrant where the officer has "probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it." *Dunn*, 226 S.W.3d at 71 (citation omitted).

Kentucky "law affords qualified immunity to the discretionary acts of peace officers performed in an official capacity, thereby shielding them 'from [] liability for good faith judgment calls made in a legally uncertain environment.'" *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. Ct. App. 2007) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)). To overcome the qualified immunity defense, the plaintiff must demonstrate "that the officer '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate' the complainant's rights," or that the officer acted with malicious intent. *Id.* (quoting *Yanero*, 65 S.W.3d at 523). "[T]he qualified official immunity analysis under Kentucky law 'tracks the inquiry for objective reasonableness and qualified immunity' under federal law." *Scheffler v. Lee*, 752 F. App'x 239, 244 (6th Cir. 2018) (quoting *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 425 (6th Cir. 2017)).

Sumerall argues there was probable cause for the arrests and he is entitled to qualified immunity. DN 29-1, at PageID # 180; DN 49, at PageID # 371. Plaintiffs referred to their § 1983 probable cause argument. DN 45-1, at PageID # 315. The Court has found that Plaintiffs have failed to demonstrate a genuine issue of material fact as to the existence of probable cause for the arrest, and that Sumerall is entitled to qualified immunity under the federal standard. Sumerall is entitled to qualified immunity on the false imprisonment claim, and summary judgment will be granted.

### b. Malicious Prosecution

Count V of the amended complaint alleges that "Defendants filed a criminal complaint falsely accusing Plaintiffs of having committed the crimes of Murder, Assault, First (1st) degree, and Tampering with Physical Evidence."  DN 27, at PageID # 147.  In *Martin v. O'Daniel*, the Kentucky Supreme Court explained the elements of a malicious prosecution claim:

> A malicious prosecution action may be established by showing that:
> 1) the defendant initiated . . . a criminal . . . proceeding against the plaintiff;
> 2) the defendant acted without probable cause;
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; . . .
> 4) the proceeding . . . terminated in favor of the [plaintiff] . . .; and
> 5) the plaintiff suffered damages as a result of the proceeding.

507 S.W.3d 1, 11–12 (Ky. 2016), *as corrected* (Sept. 22, 2016).  "Malice is a material fact that a plaintiff must prove to sustain a malicious prosecution claim."  Id. at 5.  Kentucky law requires "strict compliance with the prerequisites for maintaining a malicious prosecution action."  Id. at 7.

Sumerall argues there is no evidence that he acted with malice, or that he acted with any purpose other than to bring an offender to justice.  DN 29-1, at PageID # 181.  Plaintiffs did not respond to this argument or identify evidence of malice, a required element of this claim.  Plaintiffs have not met the burden to produce evidence demonstrating a genuine issue for trial.  Summary judgment will be granted on Count V.

### c. Defamation of Character

Count VI of the amended complaint alleges a defamation of character claim.  DN 27, at PageID # 148–49.  Plaintiffs allege that Sumerall "caused to be disseminated false statements about the Plaintiffs and their personal reputation."  *Id.*  A plaintiff must prove four elements in a defamation claim: "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation."  *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 736 (Ky. Ct. App. 2004).

Sumerall asserts he is entitled to the qualified privilege. DN 29-1, at PageID # 181. Statements made to enforce the law are entitled to a qualified privilege. *Graves v. Bowles*, 419 F. App'x 640, 645 (6th Cir. 2011). Ordinarily "the falsity of defamatory statements is presumed," but "'where the publication is made under circumstance disclosing qualified privileges, it is relieved of that presumption and the burden is on the plaintiff to prove actual malice.'" *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 283 (Ky. 2014), *as corrected* (Apr. 7, 2015) (quoting *Weinstein v. Rhorer*, 240 Ky. 679, 42 S.W.2d 892, 895 (1931)). Thus "merely alleging falsity is not enough," and the Plaintiff must produce "evidence of malice in fact" to overcome the qualified privilege. *Id.* at 286.

Sumerall argues that there is no evidence of publication, actual malice, or harm to the reputations of Steven Curtis or Zaman Taylor. DN 29-1, at PageID # 182. Plaintiffs did not respond to this argument and have not identified evidence of publication, actual malice, or injury. Plaintiffs have not demonstrated necessary elements of this claim, and summary judgment will be granted on Count VI.

### d. False Light Invasion of Privacy

In Count VII, Plaintiffs assert a claim for false light invasion of privacy. DN 27, at PageID # 149. Kentucky recognizes a false light cause of action within the tort of invasion of privacy. *McCall v. Courier-J. & Louisville Times Co.*, 623 S.W.2d 882, 887–88 (Ky. 1981). This claim requires proof that: "(1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." *Id.* at 888 (citation omitted).

Sumerall argues there is no evidence to prove that he had knowledge of falsity or acted with disregard as to the falsity of any publicized matter. DN 29-1, at PageID 182–83. Plaintiffs did not respond to this argument and have failed to demonstrate a necessary element of this claim. Summary judgment will be granted on Count VII.

### e. Intentional Infliction of Emotional Distress

Count VIII of the amended complaint alleges a claim for intentional infliction of emotional distress. DN 27, at PageID # 150. Kentucky law recognizes the tort of intentional infliction of emotional distress, and a plaintiff must prove four elements to establish the claim: "The wrongdoer's conduct must be intentional or reckless; the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; there must be a causal connection between the wrongdoer's conduct and the emotional distress and the distress suffered must be severe." *Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky. 2000).

Sumerall argues that he acted reasonably under the circumstances and thus Plaintiffs cannot establish the necessary elements of this claim. DN 29-1, at PageID # 183. Plaintiffs did not respond to this argument and have failed to identify evidence of outrageous conduct. Therefore, the claim must fail as a matter of law and summary judgment will be granted on Count VIII.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' motion for summary judgment will be granted. A separate order will be entered in accordance with this opinion.

March 9, 2023



Charles R. Simpson III, Senior Judge
United States District Court

19